IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GRADY WILLIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:13-cv-408-TFM |
| ) | [wo] |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On January 13, 2010, Grady Willis, Jr. ("Plaintiff" or "Willis") applied for supplemental security income under Title XVI and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff alleged a disability onset date of July 15, 2009. (Tr. 25, 148, 59). Willis timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on November 18, 2011. (Tr. 18-32). The Appeals Council denied Plaintiff's request for review. (Tr. 11-14). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Willis seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was born in 1962 and was 46 on his alleged onset date. (Tr. 37). The ALJ concluded that Plaintiff has a limited education and is able to communicate in English. (Tr. 37). Plaintiff did not submit any school records and his testimony about his educational background is inconsistent, but it appears that he quit school sometime between 6th and 9th

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

grade and may have attended special education classes. (Tr. 50-52, 173-74, 323, 379, 444, 448). Further, the record indicates that Plaintiff has trouble reading and writing and did not obtain a driver's license because he could not read the test. *Id.* Plaintiff has past work experience as both a construction and farm laborer. (Tr. 37, 174, 199). Plaintiff alleged that he became disabled on July 15, 2009, due to arthritis; gout in the shoulders, hands, and right knee; lower back pain; depressive anxiety; and obesity. (Tr. 172). He later alleged that he was illiterate. (Tr. 50-52, 323, 444, 448).

At the hearing before the ALJ, Plaintiff testified that he could not read or write. (Tr. 51). Plaintiff also reported to the Social Security Agency via a Disability Report, Form SSA-3368 (Tr. 171-181) that he was unable to read and understand English, and could write no more than his name in English. (Tr. 171). During this interview, Mr. Willis also stated "I have trouble reading and writing." (Tr. 174). On February 3, 2010, Bridgett S. Willis, Mr. Willis' ex-wife completed a third party function report on behalf of Mr. Willis. (Tr. 182-189). On this report, Ms. Willis indicated that Mr. Willis was unable to pay bills, count change, handle a savings account, and use a checkbook/money order because he was unable to read and write. (Tr. 185). Ms. Willis further indicated that Mr. Willis was unable to follow written instructions due to his inability to read. (Tr. 187). Also, during two differently agency-ordered consultative psychological evaluations, he told the consulting psychologist that he was illiterate. (Tr. 323, 448). However, Dr. Ghostley stopped Plaintiff's intelligence testing early stating Plaintiff "deliberately sabotaged his responses to many test items in order to appear cognitively impaired" and "just gave up easily" when asked

questions. (Tr. 449). Furthermore, forms completed by numerous different emergency room care providers on eight separate occasions during the time period from November 2009 through January 2011 reflect that Plaintiff could read and write. (Tr. 280, 285, 293, 300, 396, 401, 408, 414). Indeed, the ALJ noted in his opinion that Willis had "problems reading and writing"; however, the ALJ did not find Willis' illiteracy to be a severe impaiment. (Tr. 29).

At the hearing before the ALJ, Plaintiff was asked about his back problems. He responded,

> I could stand for so long, and then my whole body start from my left leg, it'll get numb. And to into my other side of my waist and come back down my right side of my leg. And if I stand up for a long time, I'll fall down. And then it just numbs it, and then I have tos it down, either lay down, to get my – to get the circulation to come back through my body so I can move."

(Tr. 57). Plaintiff also testified that he had difficulty sitting for more than 30 minutes, could not walk more than half a block, and could not lift a full grocery bag. (Tr. 61). However, the record reflects that Plaintiff told others that he spent the majority of his day sitting and watching television, that he attended church regularly, that he could walk a mile, that he could lift 60 pounds, and that he performed fairly demanding work as a farmhand and concrete construction worker during the period he alleged he was disabled. (Tr. 190, 324, 331 390, 442-43).

At the hearing the ALJ posited the following hypotheticals to the vocational expert. First, he stated,

> I'd like for you to assume a hypothetical individual of similar age, education, and prior work history as this claimant. I'd like for you to assume that this individual

>could lift 20 pounds occasionally, 10 pounds frequently, **and sit eight hours during an eight hour workday.** Stand and walk in combination at least six hours during an eight-hour workday, would need to alter the body's position at two-hour intervals for the relief of pain. Would also need simple, routine, repetitive type tasks to accommodate any academic deficits or side effects from medications, as well as, occasionally contact, no more than occasional contact with the general public. Given that hypothetical, would there be any positions available for such a hypothetical individual?

(Tr. 68-69) (emphasis added). Next, the ALJ posited the same hypothetical except he changed the sit option to state "Could sit at least six out of eight hours during an eight hour workday." (Tr. 69-70). Finally, the ALJ asked the VE to assume "if I were to find an individual who would be unable to sustain concentration, persistence, or remain on pace for two-hour periods of time due to pain and limitation of motion. Could that individual be able to perform any work activities?" (Tr. 71).

The VE testified that the final hypothetical individual would be "incapable of either sustaining or performing competitive work." (Tr. 71). With respect to the first hypothetical individual, the VE testified that person would be able to perform the jobs of bench assembler, light custodial or housekeeping work, and a laundry folder. (Tr. 69). With respect to the second hypothetical individual, the VE testified that person would be able to perform the jobs of sedentary bench assembler, waxer, and lens inserter. (Tr. 70).

After a hearing where Plaintiff was represented by counsel and "[a]fter careful consideration of the entire record", the ALJ concluded that Plaintiff had severe impairments including "degenerative disc disease of the lumbar spine; history of left ankle fracture status post open reduction internal fixation and infection; history of rheumatoid arthritis; depression; substance abuse; and borderline intellectual functioning." (Tr.27). The ALJ

further concluded that Plaintiff "has the residual functional capacity to perform light work . . . [h]e is capable of standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday." (Tr.30).  Thus, the ALJ found Plaintiff not disabled within the meaning of the Act. (Tr. 39).

## V. MEDICAL HISTORY

Plaintiff suffered acute injuries throughout the relevant time period.  In April, 2009, Plaintiff reported to Southeast Alabama Medical Center Emergency Center complaining that he fell while at county jail while working in the kitchen and hurt his lower back. (Tr. 296-298).  An image taken of Plaintiff's lumbar spine at that time showed "degenerative changes lumbar spine, most pronounced L3-L5.  Mild scoliosis.  No facture or subluxation." (Tr. 303).  In November 2009, Plaintiff sustained a concussion while he was operating his tractor.  (Tr. 289-91).  Later in November 2009, Plaintiff twisted and broke his ankle "as a result of orthopedic/sports related activity."  (Tr. 238, 283-284).  This break was repaired with surgery and the record demonstrates that both Plaintiff and his doctors reported that his ankle fully healed within a few months of surgery and with no significant problems.  (Tr. 371, 382).  In January 2011, Plaintiff again fell while in jail and hurt his back.  (Tr. 371-372, 380, 390).  This injury was diagnosed as muscle strain.  (Tr. 371).  On January 13, 2011, Willis underwent a lumbar spine composite, which showed advanced degenerative disc disease at L3-L4 and L4-L5 with mild degenerative disc disease at L2-L3.  (Tr. 380).

Later in February 2011, Plaintiff was seen by Dr. G. Barry Taylor, for "lower back pain for the last three years."  Plaintiff reported some numbness in left leg, but denied any

"associated tingling or burning" and stated that he "works in concrete and has no problem when back is flexed." (Tr. 390). Dr. Taylor assessed "chronic back pain correlating with advanced degenerative disc disease at L3-4 and L4-5 with no evidence of compression, deformity or subluxation." He ordered Flexeril as needed at bed time and APAP two tablets three times a day for pain control and "to subtract one tablet for any additional Lortab taken. (Tr. 391). In April 2011, Plaintiff again reported to the Southeast Alabama Emergency Facility complaining of back pain. He reported that his back pain was a "9 out of 10" and made worse by "standing" but relieved by "sitting" (Tr. 394). In May 2011, Dr. Timothy Haley, an orthopedic surgeon, examined Plaintiff for complaints of back pain and found that Plaintiff had "negative straight leg raise bilaterally" and "good strength throughout bilateral lower extremities with no focal deficits." He diagnosed "lumbar strain with possible radiculopathy" an ordered "two series of epidurals . . .therapy and medicines." He stated "I will check him back in three months unless he needs me in the meantime." (Tr. 371).

## VI. ISSUES

Willis raises three issues for judicial review:

(1) Whether the ALJ's RFC assessment conflicts with the hypothetical questions posed to the vocational expert.

(2) Whether the ALJ erred in finding Mr. Willis illiteracy not to be a severe impairment.

(3) Whether the ALJ failed to properly apply the three-part pain standard.

.

## VII.  ANALYSIS

First, Plaintiff argues that the ALJ's RFC assessment conflicts with the hypothetical questions posed to the vocational expert.  Specifically, he argues that the ALJ's RFC assessment was in error it because it was determined by the ALJ on the basis of Dr. Robert Heilpern's physical RFC assessment, which found that Plaintiff had the ability to "stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday), but failed to include a "sit" option.  (Tr. 327).  Thus, Plaintiff argues the ALJ failed adequately assess Plaintiff's ability to complete an eight-hour workday because his RFC assessment is not supported by substantial evidence.  The court disagrees.

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity."  20 C.F.R. § 404.1546(c) (2010).  The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources.  *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (The

ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The ALJ's finding must be supported by substantial evidence. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)(citations omitted).

The question before the Court is whether the ALJ's residual functional capacity finding is supported by the substantial evidence in the record as a whole. *Winschel v. Comm. of Soc. Sec.,* 631 F. 3d 1176, 1178 (11th Cir. 2011). A residual functional capacity is not based on any one piece of evidence, but rather on all of the evidence of record – including a claimant's hearing testimony, her other statements, the examination findings, the medical source opinions, and anything else that tends to bear on the claimant's allegations of disabling symptoms. 20 C.F.R. § 404.1545(a); *Moore v. Barnhart,* 405 F. 3d 1208, 1212-13 (11th Cir. 2005).

The Court recognizes that the record includes numerous complaints of lower back pain made by Plaintiff to doctors and others. (Tr. 227, 278, 298, 365, 382, 390, 394, 399, 406 and 412). However, no examining doctor found that any of Plaintiff's injuries resulted in any long-term or permanent restrictions. Indeed, during the physical exam closest in time to the ALJ's finding, May 2011, Dr. Haley, noted no pain associated with straight leg raises, good strength in Plaintiff's legs with no focal deficits. (Tr. 371). Moreover, although Plaintiff has reported and been treated for back pain, his own testimony about the effects of his pain are inconsistent throughout the record. At one point, Plaintiff reported he had

difficulty sitting for more than 30 minutes, could not walk more than half a block, and could not lift a full grocery bag. (Tr. 61). On the other hand, the record reflects that Plaintiff reported he spent the majority of his day sitting and watching television, that he attended church regularly, that he could walk a mile, that he could lift 60 pounds, and that he performed fairly demanding work as a farmhand and concrete construction worker during the period he alleged he was disabled. (Tr. 190, 324, 331 390, 442-43). Plaintiff also reported to Dr. Willis who examined him on February 28, 2011 that he "works in concrete and has no problem when back is flexed." (Tr. 390). Additionally, he reported to Southeast Alabama Emergency Room personnel in April 2011, that although his back pain was a "severe" at that time, it was "relieved by sitting". (Tr. 394). Accordingly, the court concludes that the record as a whole supports the ALJ's RFC assessment which included no stated limitations on Plaintiff's ability to sit.

Second, Plaintiff argues that the ALJ erred in failing to find his illiteracy to be a severe impairment. However, the record as whole does not support Plaintiff's claim of illiteracy. Indeed, forms completed by numerous different emergency room care providers on eight separate occasions during the time period from November 2009 through January 2011 reflect that Plaintiff could read and write. (Tr. 280, 285, 293, 300, 396, 401, 408, 414). Also, Dr. Ghostley stopped Plaintiff's intelligence testing early stating Plaintiff "deliberately sabotaged his responses to many test items in order to appear cognitively impaired" and "just gave up easily" when asked questions. (Tr. 449).

Furthermore, the court notes that although the ALJ did not find Willis' illiteracy to be a severe impairment, the ALJ discussed in his opinion that Willis had "problems reading and writing". (Tr. 29). Moreover, the ALJ found that Plaintiff had a severe impairment of borderline intellectual functioning (Tr. 34-37) based upon both Randall Jordan and David Ghostley's, both, licensed clinical psychologist findings, and diagnoses. (Tr. 324, 449-50). Indeed, these two psychologists and also Robert Estock, acknowledged Plaintiff's subjective allegation that he was illiterate, but concluded that Plaintiff could perform jobs involving simple, routine tasks (Tr. 325, 350) or unskilled labor, generally (Tr. 450, 451-452).

Finally, although the ALJ did not find illiteracy to be a severe impairment at step two of the sequential evaluation, it is undisputed that the ALJ specifically discussed the Plaintiff's illiteracy and borderline intellectual functioning in her decision. (Tr. 29, 34-37). *See Newsome ex rel. Bell v Barnhart,* 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006) (Failure of ALJ to make determination as to severity of impairment was harmless error where ALJ thoroughly discussed the evidence of the impairment). Moreover, under agency regulations the ALJ considers all of Plaintiff's impairments, both "severe" and "nonsevere", in the sequential evaluation process. *See* 20 C.F.R.§ 416.923 (In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.) Accordingly, the court concludes that any error committed by the ALJ with respect to analyzing the severity of

Plaintiff's illiteracy is "harmless", *see Newsome, id.,* at 1201, and that "substantial evidence" supports the Commissioner's decision. *Miles,* 84 F.3d at 1400.

Third, Plaintiff argues that the ALJ improperly applied the pain standard. Specifically Willis argues that the ALJ erred in making a determination of his credibility because she failed to properly apply the three-part pain standard. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

In concluding at Step 5 that Plaintiff has the functional capacity to perform light work, the ALJ restated the "pain standard". Indeed, she stated

> [I]t must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms. [Next]"the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.

(Tr. 31).  After evaluating all the evidence the ALJ concluded

> "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimants statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 34-35).

The ALJ was particularly persuaded by Dr. Ghostley's conclusion that claimant was malingering. (Tr. 34). Indeed, Dr. Ghostley found that Plaintiff "deliberately sabotaged his responses to many test items in order to appear cognitively impaired" and "just gave up easily" when asked questions. (Tr. 449)  And during Plaintiff's depression test, Dr. Ghostly found that Plaintiff "endorsed so many areas of psychopathology that his entire profile was elevated and intentionally exaggerated." (Tr. 449).  Defendant argues that this malingering is substantial evidence which calls into question all of Plaintiff's representations to the agency.

The court agrees.  *See Sellers v. Barnhart,* 246 F. Supp. 2d 1201, 1213 (M.D.Ala.2002)(Plaintiff's malingering constituted substantial evidence upon which the ALJ could base his decision to discredit Plaintiff's subjective complaints of pain.)  Indeed, Plaintiff's case is similar to the *Sellers* case.  In *Sellers,* the claimant alleged that he had extreme cognitive impairments, back pain, and gout – just as Plaintiff alleged here. *Compare* (Tr. 50-52, 172) *with Sellers* 246 F. Supp. 2d at 1203.  And in both *Sellers* and this case, the evidence strongly indicated malingering, and also indicated that the claimant was likely within the borderline intellectual functioning range.  *Compare* (Tr. 449-450) *with Sellers*, 246 F. Supp. 2d at 1206(examining psychologist indicating that claimant's malingering was

"quite obvious"). Thus, the Court is persuaded that evidence of Willis' malingering discredits his complaints of pain.

Moreover, as previously discussed, Plaintiff's own statements about the effects of his pain also contradict themselves. At one point, Plaintiff reported he had difficulty sitting for more than 30 minutes, could not walk more than half a block, and could not lift a full grocery bag. (Tr. 61). On the other hand, the record reflects that Plaintiff reported he spent the majority of his day sitting and watching television, that he attended church regularly, that he could walk a mile, that he could lift 60 pounds, and that he performed fairly demanding work as a farmhand and concrete construction worker during the period he alleged he was disabled. (Tr. 190, 324, 331, 390, 442-43). Indeed, Plaintiff reported to Dr. Willis who examined him on February 28, 2011 that he "works in concrete and has no problem when back is flexed." (Tr. 390). Additionally, he reported to Southeast Alabama Emergency Room personnel in April 2011, that although his back pain was a "severe" at that time, it was "relieved by sitting". (Tr. 394). Accordingly, the Court concludes that the ALJ did not err in applying the pain standard in this case. Thus, the Court further concludes that the ALJ's conclusion that Plaintiff is not disabled is supported by the record as a whole.

### IX. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 30th day of September, 2014.

>/s/ Terry F. Moorer
>TERRY F. MOORER
>UNITED STATES MAGISTRATE JUDGE